UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DIANE BUTLER,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>                    Defendant. | NO: 1:15-CV-3162-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 17, 20). These matters were submitted for consideration without oral argument. The Court—having reviewed the administrative record and the parties' completed briefing—is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion and denies Defendant's motion.

///

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under section 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not

reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1117 (internal quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful

activity," the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id.* § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

1  activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is
2  relevant to both the fourth and fifth steps of the analysis.

3  At step four, the Commissioner considers whether, in view of the claimant's
4  RFC, the claimant is capable of performing work that he or she has performed in
5  the past ("past relevant work"). *Id.* § 416.920(a)(4)(iv). If the claimant is capable
6  of performing past relevant work, the Commissioner must find that the claimant is
7  not disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such
8  work, the analysis proceeds to step five.

9  At step five, the Commissioner considers whether, in view of the claimant's
10 RFC, the claimant is capable of performing other work in the national economy.
11 *Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also
12 consider vocational factors such as the claimant's age, education, and work
13 experience. *Id.* If the claimant is capable of adjusting to other work, the
14 Commissioner must find that the claimant is not disabled. *Id.* § 416.920(g)(1). If
15 the claimant is not capable of adjusting to other work, the analysis concludes with
16 a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

17 The claimant bears the burden of proof at steps one through four above.
18 *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the
19 analysis proceeds to step five, the burden shifts to the Commissioner to establish
20 that (1) the claimant is capable of performing other work; and (2) such work

"exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 15, 2011, Plaintiff protectively filed an application for supplemental security income under Title XVI, Tr. 283-88, alleging an amended disability onset date of April 1, 2011, Tr. 46.[1] This application was denied initially and upon reconsideration, Tr. 187-95, 203-11, and Plaintiff requested a hearing, Tr. 212-13. A video hearing was held with an Administrative Law Judge ("ALJ") on November 27, 2013. Tr. 42-97. On February 10, 2014, the ALJ issued a decision denying Plaintiff benefits. Tr. 18-41.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2011, the amended alleged onset date. Tr. 24. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, social phobia, and polyarthralgia. Tr. 24-25. At step three, the

---

[1] Plaintiff also protectively filed an application for a period of disability and disability insurance benefits under Title II, initially alleging a disability onset date of December 30, 2011, Tr. 281-82; however, Plaintiff amended her onset date at the hearing, and, because her date last insured was June 30, 2002, she surrendered her Title II claim. *See* Tr. 46.

1  ALJ found that Plaintiff did not have an impairment or combination of

2  impairments that meets or medically equals the severity of a listed impairment. Tr.

3  25-27. The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Considering the effects of pain, the claimant would be able to occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can engage in frequent bilateral handling and fingering; needs to avoid concentrated exposure to extreme cold, vibration and hazards such as moving machinery and unprotected heights; in order to meet ordinary and reasonable employer expectations regarding attendance, production and work-place behavior, she can understand, remember and carry-out simple, routine tasks in 2-hour intervals; she can have occasional brief and superficial contact with the general public and co-workers.

Tr. 27. At step four, the ALJ found Plaintiff capable of performing past relevant work as a housekeeper/cleaner. Tr. 32-33. Alternatively, at step five, the ALJ found—considering Plaintiff's age, education, work experience, and RFC—that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as housekeeping/cleaner, bench assembler, electrical accessories assembler. Tr. 34. The ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied her claim on that basis. Tr. 35.

The Appeals Council denied Plaintiff's request for review on July 13, 2015, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-4; 20 C.F.R. §§ 416.1484, 422.210.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. While Plaintiff raises three issues in her motion, ECF No. 17, the Court concludes the ALJ erred in failing to properly evaluate Plaintiff's fibromyalgia. Therefore, this case is remanded for further proceedings.

**DISCUSSION**

**A. Assessment of Fibromyalgia**

Plaintiff faults the ALJ for failing to classify her fibromyalgia as a medically determinable impairment pursuant to Social Security Regulation ("SSR") 12-2p at step two of the evaluation process. ECF No. 17 at 6-10.

Step-two of the evaluation process requires the ALJ to determine if the claimant has a severe medically determinable physical or mental impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "not severe" if "it does not significantly limit [the claimant's] physical ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Generally, "the step two inquiry is merely a de minimis screening device to dispose of groundless claims," *id.*; as a result, the ALJ's failure to classify an

impairment as severe is harmless if the ALJ proceeds with the evaluation process and considers both severe and non-severe impairments when formulating the RFC.

Here, at step two, the ALJ found Plaintiff had several severe and non-severe impairments; however, the ALJ found Plaintiff's fibromyalgia was not medically determinable. Tr. 24. Consequently, the ALJ did not incorporate Plaintiff's alleged limitations from her fibromyalgia into the RFC finding. The ALJ based this finding on the absence of treatment records during the relevant period—at least the lack of sufficiently detailed records—showing that Plaintiff has the trigger points of tenderness consistent with fibromyalgia. Tr. 24-25. Specifically, the ALJ rejected as deficient the opinion of one treating physician:

> While David Lindgren, M.D., stated on September 30, 2011, that at that time the claimant had 11/18 tender points consistent with fibromyalgia, he did not detail how he performed his testing; per SSR 12-2p, the physician should perform digital palpation with an approximate force of 9 pounds, or approximately the amount of pressure needed to blanch the thumbnail of the examiner, their location, the nature of her alleged pain, etc. Due to the lack of specificity regarding the claimant's testing in the record, her alleged fibromyalgia, under SSR 12-2p, is not a medically determinable impairment.

Tr. 25 (internal record citations omitted).

The Social Security Administration promulgated regulations in 2012 to provide guidance on how to develop evidence that a person has a medically determinable impairment of fibromyalgia and how the administration evaluates

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

fibromyalgia in claims brought under Titles II and XVI of the Social Security Act. SSR 12-2p, 2012 WL 3104869. A claimant must provide evidence that a licensed physician reviewed her medical history, conducted a physical examination, and made a fibromyalgia diagnosis. *Id.* at *2. The physician must also provide evidence which satisfies one of two alternate diagnostic criteria: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria"), or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). *Id.* at *2-3. Under the 1990 Criteria, the evidence must show: (1) "a history of widespread pain . . . that has persisted . . . for at least 3 months;" (2) at least 11 positive tender points, found both bilaterally and above and below the waist; and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* at *3. Under the 2010 Criteria, the evidence must show: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* Finally, the physician's diagnosis must not be "inconsistent with the other evidence in the person's case record." *Id.* at *2.

      The Commissioner concedes that the ALJ erred in assessing Plaintiff's alleged fibromyalgia, ECF No. 20 at 7, and this Court agrees.

First, there is nothing in SSR 12-2p that requires the diagnosing physician to detail precisely *how* he performed the tender point testing. *See* SSR 12-2, 2012 WL 3104869. The ruling merely explains how a physician should perform the testing. *Id.* at *3. Dr. Lindgren's treatment records indicate that he conducted a full examination and identified 11 out of 18 tender points consistent with fibromyalgia. Tr. 535, 564. As Plaintiff points out, detailed documentation of *how* medical providers conduct their testing is generally neither provided by the provider nor demanded by the ALJ.

Second, while the Court notes that Dr. Lindgren did not identify the location of the 11 tender points, it is the ALJ's duty to develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "In cases involving [fibromyalgia], as in any case, [the administration] will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation." SSR 12-2, 2012 WL 3104869, at *3. Here, while the ALJ faulted Dr. Lindgren for failing to identify the location of the tender points, she could have requested that Dr. Lindgren supplement his treatment notes. Additionally, the ALJ could have asked for the medical records of Plaintiff's visit with Dr. Fowler, the rheumatologist to whom Dr. Lindgren referred Plaintiff in September 2011 and who recommended treatment for Plaintiff's fibromyalgia. *See* 20 C.F.R. § 416.920b(c) (listing actions the administration may take when the evidence is

inconsistent or insufficient); SSR 12-2p, 2012 WL 3104869, at *4 (listing actions the ALJ may take to resolve the insufficiency of the evidence presented, including requesting additional existing records or asking the person for more information).

Second, the ALJ ignored other opinion evidence in the record substantiating Plaintiff's fibromyalgia diagnosis. "When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id.* at *3. Dr. Fowler, a rheumatologist to whom Plaintiff was referred and who examined Plaintiff in September 2011, recommended treatment for her fibromyalgia. Tr. 534-35. This Court also notes that the ALJ failed to mention Dr. Pellicer's clinical impression of fibromyalgia. Tr. 488. Finally, state agency consultants listed fibromyalgia as one of Plaintiff's medically determinable impairments. The ALJ failed to mention this evidence when determining that Plaintiff's fibromyalgia was non-medically determinable.

Finally, even if the ALJ's analysis under the 1990 Criteria was adequate, the ALJ wholly failed to analyze Plaintiff's fibromyalgia under the 2010 criteria as directed under SSR 12-2p. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (instructing the ALJ, on remand, to consider both the 1990 and 2010 diagnostic criteria when evaluating the claimant's fibromyalgia pursuant to the Commissioner's binding ruling in SSR 12-2p); *Mahoney-Garcia v.*

*Colvin*, No. 3:14-cv-5599-RBL-KLS, 2015 WL 1965382, at *2-4 (W.D. Wash. Apr. 17, 2015). Importantly, Plaintiff demonstrated several fibromyalgia symptoms, signs, or co-occurring conditions, including pain, social phobia, memory loss, tiredness, and depression, which are relevant under the 2010 criteria. Thus, the ALJ was required to abide by the binding SSR ruling, *see* 20 C.F.R. § 402.35(b)(1), and determine whether Plaintiff's fibromyalgia is medically determinable impairment under the 2010 diagnostic criteria.

This Court further finds that the ALJ's step two error was not harmless.

First, this Court rejects Defendant's argument that Plaintiff's fibromyalgia and polyarthralgia impairments are interchangeable as the ALJ treated these conditions as distinct impairments in her evaluation process. Tr. 24-25.

Second, by classifying Plaintiff's fibromyalgia as a non-medically determinable impairment—rather than a severe or non-severe impairment—the ALJ excluded the effects of this condition when formulating Plaintiff's RFC, "rendering the ALJ's RFC finding suspect." *Neisinger v. Colvin*, No. 2:15-cv-1718-DWC, 2016 WL 2866260, at *6 (W.D. Wash. May 17, 2016); *cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding the ALJ's failure to discuss a claimant's bursitis at step 2 harmless where the ALJ extensively discussed the condition at step 4 of the analysis); *see* 20 C.F.R. § 416.929 (b) ("Your symptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or

laboratory findings show that a medically determinable impairment(s) is present."); SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments . . . .").

Finally, the ALJ's analysis of Plaintiff's fibromyalgia has infected her assessment of the opinion evidence—namely, treating physician Dr. Lindgren. Dr. Lindgren, who diagnosed Plaintiff with fibromyalgia in September 2011, opined in July 2012 and April 2013 that Plaintiff would have to lie down during the day, that work would deteriorate her condition, and that Plaintiff would miss four or more days of work per month due to her symptoms. Tr. 564-65, 579-80. The ALJ's fibromyalgia analysis focused solely on Dr. Lindgren's September 2011 treatment notes, and in finding his notes deficient, afforded his 2012 and 2013 opinions little weight when formulating Plaintiff's RFC primarily for this reason.[2] Tr. 31. In short, this Court is led to question whether the ALJ would have discounted Dr.

---

[2] While Dr. Lindgren's treatment notes from February 2013 note that a rheumatologist found that Plaintiff did not meet criteria for fibromyalgia, Tr. 619, his April 2013 opinion indicates a continued diagnosis of fibromyalgia, Tr. 579. The ALJ neither mentioned these notes nor requested that the rheumatologist's treatment records be made part of Plaintiff's file.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

Lindgren's opined limitations had the ALJ properly evaluated Plaintiff's fibromyalgia at step two.

**B. Remedy**

In the event of reversible error, the parties disagree as to the appropriate remedy. Plaintiff urges this Court to reverse for an immediate award of benefits. ECF No. 17 at 24. The Government, on the other hand, asserts that the proper remedy should be to remand for further proceedings.  ECF No. 20 at 15 n.3.

"When an ALJ's denial of benefits is based upon legal error or not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *See Hill*, 698 F.3d at 1162 (internal quotation marks omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Id.* The Ninth Circuit's "credit-as-true" rule, on the other hand, directs that remand for an award of benefits is appropriate when

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even when all conditions of the credit-as-true rule are satisfied, a court is required to remand for further proceedings when an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Id.* at 1021.

Here, there are outstanding issues that must be resolved and it is unclear that Plaintiff would be found disabled if all the evidence were properly gathered and evaluated. By failing to properly evaluate Plaintiff's fibromyalgia, the ALJ's assessment of the medical evidence and Plaintiff's RFC have been called into doubt. Whether, when the evidence in the record as a whole is properly evaluated, Plaintiff's physical and mental limitations impair her ability to perform basic work activities must yet be resolved.

Upon remand, the ALJ should further develop the record and issue a new decision. The ALJ should reevaluate all of Plaintiff's impairments; Plaintiff's credibility; all medical and non-medical source opinions; Plaintiff's RFC; and, if necessary, Plaintiff's ability to perform work at steps four and five. Plaintiff may present new arguments and evidence, and the ALJ may conduct further proceedings as necessary.

//

//

//

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

3. Pursuant to sentence four of 42 U.S.C. § 405(g), this action is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

4. The District Court Executive is directed to file this Order, enter **JUDGMENT** for Plaintiff, provide copies to counsel, and **CLOSE** the file.

**DATED** August 23, 2016.

THOMAS O. RICE
Chief United States District Judge